IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

BRYAN BROTHERS CATTLE COMPANY, ET AL.                         PLAINTIFFS

V.                                                                               NO. 2:4CV139SAA
**LEAD CASE**
GLENBROOK CATTLE COMPANY, LLC, ET AL.                           DEFENDANTS

**CONSOLIDATED WITH**

WILLIAM C. WEEKS, ET AL.                                                    PLAINTIFFS

V.                                                                                  NO. 2:4CV145SAA
**TO BE FILED IN ALL CASES**
BROOKS LOUIS "LOUIE" DICKERSON, ET AL.                            DEFENDANTS

MEMORANDUM OPINION

These cases come before the court on the following motions:

1.       Bancorpsouth Bank's motion to dismiss;

2.       Bryan Brothers Cattle Company, B & S Cattle Company and Dennis Bryan's motion for summary judgment; and

3.       Bancorpsouth Bank's amended motion to dismiss.

In accordance with the provisions of 28 U.S.C. § 636(c), the parties have consented to have a magistrate judge conduct all the proceedings in the cases, therefore the undersigned has the authority to issue this opinion. The motions are fully briefed and ripe for review.

BRIEF FACTUAL SUMMARY

The above styled and numbered cases arise from the same incident or set of circumstances regarding the sale of approximately 1600 head of cattle from Glenbrook Cattle

1

Company (hereinafter referred to as Glenbrook) to Bryan Brothers Cattle Company and B & S Cattle Company, of which Dennis Bryan is a principal (hereinafter collectively referred to as "plaintiffs") in May 2004. Glenbrook was a limited liability corporation formed between Louie Dickerson, Ellen Hardy, Bill Weeks and John David Weeks for the purpose of operating a cattle pre-conditioning business.[1] While plaintiffs had an ongoing business relationship with Glenbrook, the actual contact during the conduct of this business relationship was between Clayton Zweirschke, Glenbrook's farm manager who was responsible for the day to day operations of the pre-conditioning program, and Dennis Bryan on behalf of plaintiffs.

Under the custom and practice between plaintiffs and Glenbrook, plaintiffs would place orders for certain cattle at the beginning of each week. Zweirschke would receive the orders and forward them to buyers at sale barns. During the week these buyers would purchase cattle at the sale barns, ostensibly using the "credit" of Louis Dickerson or Ellen Hardy, then forward the invoices to Glenbrook.[2] The sale barns would then ship the purchased cattle to Glenbrook. Upon receipt of the cattle, Glenbrook would vaccinate the cattle and brand and tag each head with a Bryan Brothers/B & S Cattle Company tag and brand. Glenbrook would also notify plaintiffs of the various purchases and send them a copy of the invoices and bills of sale. In turn, plaintiffs would wire funds to Glenbrook, which would then mail a check to the respective sale

---

[1] Cattle pre-conditioning is a program by which Glenbrook would purchase calves who were just weaned from the mother and process them through vaccinations and a grazing program in order to fatten the calves. It is a process that lasts approximately 50 days.

[2] The invoices from the sale barns to Glenbrook list Glenbrook as the individual or company for whom the cattle were sold and often the name or number of the actual buyer. It is not possible, however, for the court to determine which cattle, as represented in the sample bills of sale, were in Glenbrook's preconditioning program at the time in question.

2

barns for the costs of the purchase. Glenbrook would then maintain the cattle for the pre-conditioning period. At the end of the pre-conditioning period, Glenbrook would ship the cattle to the plaintiffs and would charge a fee of $.70 per pound of weight gained per head of cattle during the pre-conditioning period.

In May, 2004, plaintiffs had approximately 1600 head of cattle in various stages of Glenbrook's preconditioning program. It is clear from the exhibits provided by the parties that there were bills of sale on April 27, 2004 and May 19, 2004, referencing the sale of cattle from Louie Dickerson/Glenbrook Cattle Company to B & S Cattle Company and Bryan Brothers Cattle Company, respectively, which were signed by Louie Dickerson as the seller. On May 19, 2004, Zweirschke called Dennis Bryan and advised him that he should arrange for immediate shipment of all Bryan Brothers/B & S Cattle Company cattle in Glenbrook's program because Glenbrook, due to financial problems, was unable to properly feed and vaccinate the cows. Shipment was arranged. After approximately half of the cattle had shipped, a Tate County Justice Court Judge entered a temporary restraining order prohibiting additional shipment of the remaining cattle. Later the same day a Tate County Chancery Court issued a Temporary Restraining Order to the same effect.

By Order of the Tate County Chancery Court dated June 2, 2004, plaintiffs took possession of the majority of the remaining cattle and deposited funds with the Tate County Chancery Clerk as security. Thereafter, approximately 60 head of cattle were sold at auction with the proceeds also deposited with the Tate County Chancery Clerk. On May 25, 2005, the plaintiffs filed their complaint for replevin in this court. Following removal of No. 2:04cv145, the chancery action, to this court, the Clerk of Court for the Northern District of Mississippi

accepted the funds from the Tate County Chancery Court. To date the Clerk of this Court holds approximately $342,500.00 on deposit in this case.

The remaining parties in this case are either individual defendants, banks which are the creditors of the individual defendants and which claim to have liens against cattle owned by these individuals, or other cattle operators, like plaintiffs, who had previously had cattle in Glenbrook's pre-conditioning program. The three motions currently pending in this case all revolve around the same issue: Whether in May 2004 the cattle in Glenbrook's pre-conditioning program belonged to plaintiffs free and clear of any lien or interest of any creditor or other cattle operator pursuant to the Food Security Act, 7 U.S.C. §1631, *et seq.*, (hereinafter FSA) or whether the respective defendants in this case – creditors and cattle operators – have perfected lien interests in the cattle and therefore in the funds deposited by plaintiffs with the Clerk of Court. It is undisputed that the issue turns on the applicability of the FSA, and that the plaintiffs have not registered under the Act. The motions are all fully briefed and are ready for ruling.

## A. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure is generally disfavored and is rarely granted. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.1986); *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir.1981). In deciding a motion to dismiss under Rule 12, the court accepts as true the well-pleaded factual allegations contained in the plaintiff's complaint. *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir.1995). "Taking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks," dismissal is proper. *Id.* It must appear beyond any doubt that the plaintiff "can prove no set of facts in support of his claim

which would entitle him to relief." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995) (alterations and citations omitted). Even if it appears an almost certainty that the facts as alleged in the complaint cannot be proved to support the claim, the complaint cannot be dismissed so long as a claim is stated. *Boudeloche v. Grow Chem. Coatings Corp.*, 728 F.2d 759, 762 (5th Cir.1984). If a required element, a prerequisite to obtaining the requested relief, is lacking in the complaint, dismissal is proper. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). Pursuant to Rule 12(b)(6), [i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . ." As the defendants' motion to dismiss relies on several documents outside the pleadings in this case and the court has not excluded that material, the court must analyze the motion pursuant to Rule 56.

Under Rule 56(e) the burden shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 274 (1986). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex* at 477 U.S. 325, 91 L. Ed. 2d 265, 275 ("the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case"). *Celotex Corp.*, 477 U.S. at 324, 91 L. Ed. 2d at 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be drawn in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

5

242, 255, 91 L. Ed. 2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 91 L. Ed. 2d at 273. Before finding that no genuine issue of material fact exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Cor.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 552 (1986).

### B. DEFENDANT BANCORPSOUTH'S MOTION TO DISMISS AND AMENDED MOTION TO DISMISS

On September 30, 2004, defendant Bancorpsouth filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its motion, Bancorpsouth claims that the FSA, 7 U.S.C. § 1631, is the controlling statute in this matter and that the plaintiffs are not entitled to the protections afforded under this section as they did not register with the Mississippi Secretary of State's Office as purchasers of food products. Bancorpsouth argues that the plaintiffs have failed to state a claim for which relief may be granted as they have failed to meet the requirements of the FSA which would protect them as purchasers of farm products. The plaintiffs respond that pursuant to FSA, specifically under 7 U.S.C. §1631(e)(2), the cattle in issue is not subject to a perfected security interest because the financing statements that ostensibly cover the cattle in question do not conform to the FSA's requirement that they list the proper party as the debtor. In other words, the plaintiffs claim that the creditors, and specifically Bancorpsouth, did not file effective financing statements to cover the cattle purchased by the plaintiffs because the financing statements filed by Bancorpsouth list

6

Dickerson or Hardy or a named individual as the debtor, but they do not list Glenbrook – the party from whom the plaintiffs say they purchased the cattle.

According to the FSA, 7 U.S.C. §1631, Congress specifically found that there existed state laws that "permit a secured lender to enforce liens against a purchaser of farm products even if the purchaser does not know that the sale of the products violates the lender's security interest in the products," and that the purchaser "lacks any practical method for discovering the existence of the security interest, and has no reasonable means to ensure that the seller uses the sales proceeds to repay the lender. . .," thus subjecting the "purchaser of farm products to double payment for the products. . . ." 7 U.S.C. §1631(a). To avoid this inequitable result, Congress enacted the FSA in order to "remove such burden on and obstruction to interstate commerce in farm products." 7 U.S.C. §1631(b). In order to make information more readily available to purchasers of farm products, the FSA provides that in each state which has a "central filing system," as does Mississippi, which allows lenders to file effective financing statements on a statewide basis, the lender may file the prescribed financing statement with the office of the State's Secretary of State. The State's Secretary of State is then required to maintain a master list of all financing statements filed by lenders, and to make that list available on a regular basis to buyers of farm products who register to receive information concerning debtors. 7 U.S.C. § 1631(c)(2)(D). Under the provisions of the FSA, a buyer in the ordinary course of business purchases a farm product, such as the cattle in question, free of security interest, even if the security interest is perfected and the buyer knows of the existence of such interest unless,

> **(2)** in the case of a farm product produced in a State that has established a central filing system–

7

> > **(A)** the buyer has failed to register with the Secretary of State of such State prior to the purchase of farm products; and
>
> > **(B)** the secured party has filed an effective financing statement or notice that covers the farm products being sold;

7 U.S.C. §1631(e)(2). In the instant case, it is undisputed that the plaintiffs were not registered with the Mississippi Secretary of State as a purchaser of farm products. Accordingly, if Bancorpsouth can show that it, as the secured party, filed an "effective financing statement or notice that covers the farm products being sold," then the plaintiffs took the cattle in question subject to the perfected security interests of Bancorpsouth.

Under the FSA, the term "effective financing statement" means that the financing statement or notice, among other requirements:

> **(C)** contains,
>
> > **(I)** the name and address of the secured party;
>
> > **(ii)** the name and address of the person indebted to the secured party;
>
> > **(iii)** the social security number, or other approved unique identifier, of the debtor or, in the case of a debtor doing business other than as an individual, the Internal Revenue Service taxpayer identification number, or other approved unique identifier, of such debtor; and
>
> > **(iv)** a description of the farm products subject to the security interest created by the debtor, including the amount of such products where applicable, and the name of each county or parish in which the farm products are produced or located; . . . .
>
> > . . . .
>
> > **(H)** substantially complies with the requirements of this subparagraph even though it contains minor errors that are not seriously misleading.

7 U.S.C. § 1631(c)(4). Plaintiffs contend that none of the creditors in this case filed effective

financing statements in that no financing statement identifies Glenbrook as a debtor. Thus, argue plaintiffs, there exists no financing statement that trumps the plaintiffs' rights to the subject cattle, and they are entitled to the cattle free and clear of any alleged security interest.

Bancorpsouth responds that the financing statements which it filed listing Dickerson or Hardy as debtors are sufficient to be considered an "effective financing statement" under the FSA because plaintiffs knew that both Hardy and Dickerson were associates in the Glenbrook Cattle LLC operation, and Dickerson was the registered agent for Glenbrook. Significantly, at least to the court, Bancorpsouth points out that on the bill of sale from May 13, 2004, from Dickerson to plaintiffs, the seller is listed as "Louie Dickerson/Glenbrook Cattle Company," thus putting plaintiffs on notice that some sort of inquiry into Dickerson's interests was necessary. Under this theory, Bancorpsouth argues that the plaintiffs must take the cattle in question subject to its perfected security interests and cannot be afforded the protections of the FSA.

The court is guided by the decision of the United States District Court for the Southern District of Mississippi in a similar case, *First Bank v. Eastern Livestock Company*, 837 F.Supp. 792 (S.D. Miss. 1993). In that case, the court addressed both the FSA and Mississippi state law and their interaction under circumstances similar to those here. There, First Bank had a security interest, a UCC-1F form,

> which, following the space on the form providing, "This Financing Statement covers the following types (or items) of property,' recited:
> All Beef and Dairy Cattle, branded or unbranded, including cows, calves, heifers, steers, and bulls, now owned by Debtor or hereafter acquired, and all farm supplies and farm equipment now owned by Debtor or hereafter acquired. Livestock to be kept on real estate owned by Bobby Caston and located on HWY 569, Amtie [sic] County, Ms. and leased by Debtor.

*First Bank v. Eastern Livestock Company*, 837 F.Supp. 792, 795 (S.D. Miss. 1993). Eastern was

a purchaser who, like the plaintiffs in the case at bar, was not registered with the Secretary of State. As in the instant case, the central issue in *First Bank* was whether the financing statement filed by the creditor was an "effective financing statement" under the FSA. The Southern District Court determined that it was, and that if the language of the financing statement had not gone further to limit the effect of the statement to cattle "to be kept on real estate owned by Bobby Caston and located on HWY 569, Amtie [sic] County, Ms. And leased by Debtor," the court would have had no difficulty concluding that the financing statement was "effective" for purposes of the FSA. This qualifying language, however, raised the question of whether the statement covered the specific cattle in question, which had *never* been located on the referenced real estate. The court found that the referenced language was not, as argued by the creditor, mere surplusage and rendered the financing statement "at least ambiguous." *Id.* at 798. In resolving the ambiguity the court concluded that it should be guided by cases addressing the adequacy of financing statements under the Uniform Commercial Code, an approach which this court finds eminently reasonable. Analyzing those cases the court noted that

> [b]y far, the majority of courts addressing the adequacy of financing statements under the U.C.C. have held that a financing statement, in order to perfect a security interest, need not specifically identify the property which is the subject of a security interest; rather, it is sufficient if the description would put a reasonably prudent prospective lender or buyer on notice that the collateral sought to be purchased or encumbered might be the subject of a preexisting security interest.

*First Bank*, at 799. As the court noted,

> the sole function of financing statements under the U.C.C. is to put third parties – usually prospective buyers or lenders – on notice that there may be an enforceable security interest in the property of the debtor. . . . And, "[s]ince the financing statement is designed only to provide general notice or warning that certain collateral might already be encumbered," . . . the financing statement "need not provide interested parties with all of the information he needs to understand the

> secured transaction, but only with the information that such a transaction has taken place and that the particulars thereof may be obtained from the named secured party at the address shown."

*Id.* at 799-800 (citations omitted). Further, this court notes that the Fifth Circuit has held that the critical inquiry in assessing whether a security interest is perfected is "whether a reasonably prudent subsequent creditor would have discovered the prior security interest." *In re McBee,* 714 F.2d 1316, 1321 (5th Cir.1983). Thus, whether a record gives sufficient notice to creditors or purchasers "'depends . . . on what a person of ordinary business prudence would have found out from pursuing such lines of inquiry as the data given . . . would naturally suggest to his mind.' " *United States v. Crittenden*, 600 F.2d 478, 480 (5th Cir.1979) (quoting *Yancey Bros. v. Dehco,* 108 Ga.App. 875, 877-78, 134 S.E.2d 828, 831 (1964)). In conclusion, the Southern District Court held that the ambiguity in the description of the collateral was not sufficient as to not make it an "effective financing statement" under the FSA, but the existence of a question of fact regarding whether the description covered the specific collateral in question did preclude summary judgment. *First Bank* at 803.

In the instant case, there is evidence that the initial purchases from the sale barns were made using the credit of either Louis Dickerson or Ellen Hardy. The court has been provided with copies of bills of sale or invoices directly from the sale barns referencing Glenbrook as the individual or company for whom the cattle were purchased by the respective buyers. Nevertheless, the bills of sale from Glenbrook to Bryan Brothers or B & S Cattle Company show the seller of the cattle as "Louie Dickerson/Glenbrook Cattle Company" and are signed by Louie Dickerson individually. These facts make the import of the financing statements, all UCC-1F forms, as filed by the defendant creditors, including Bancorpsouth, "at least ambiguous" at this

11

point, and may very well have functioned as intended, *i.e.*, they may have "provide[d] general notice or warning that [the] collateral might already be encumbered," thus triggering an obligation on plaintiffs' part to inquire further into the status of the cattle in question. The court simply cannot accept at face value plaintiffs' argument that the name of the seller on the Bill of Sale is of no significance simply because plaintiffs meant to be dealing only with Glenbrook. Specifically, there exists a genuine issue of material fact as to whether a prudent purchaser would have recognized the liens on cattle owned by individuals affiliated with Glenbrook Cattle Company LLC as liens on cattle bought from Glenbrook especially in light of the fact that the Bill of Sale references both Dickerson and Glenbrook. Accordingly, the court finds that the motion of Bancorpsouth to dismiss as well as its amended motion to dismiss should be denied.

C. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

In accordance with this opinion, the court further finds that the plaintiffs' motion for summary judgment, which deals with the same central issues, should likewise be denied.

CONCLUSION

For the foregoing reasons, the motion of Bancorpsouth to dismiss and the plaintiffs' motion for summary judgment are DENIED.

THIS, the 15TH day of September, 2005.

                                        /s/ S. ALLAN ALEXANDER
                                        UNITED STATES MAGISTRATE JUDGE