IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

BRYAN BROTHERS CATTLE COMPANY, ET AL.                                    PLAINTIFFS

V.                                                                                           NO. 2:4CV139SAA

                                                                                              **LEAD CASE**
GLENBROOK CATTLE COMPANY, LLC, ET AL.                               DEFENDANTS

                                                                                      **CONSOLIDATED WITH**

WILLIAM C. WEEKS, ET AL.                                                          PLAINTIFFS

V.                                                                                           NO. 2:4CV145SAA

                                                                                      **TO BE FILED IN ALL CASES**

BROOKS LOUIS "LOUIE" DICKERSON, ET AL.                               DEFENDANTS

MEMORANDUM OPINION

This case comes before the court on the following motions:

1. Bryan Brothers Cattle Company, B & S Cattle Company and Dennis Bryan's second motion for summary judgment;

2. Peoples Bank's motion for summary judgment;

3. Cornerstone Bank's motion to strike, or in the alternative, leave to submit rebuttal memorandum, and

4. Peoples Bank's motions *in limine*.

In accordance with the provisions of 28 U.S.C. § 636(c), the parties have consented to have a magistrate judge conduct all the proceedings in this case, therefore the undersigned has the authority to issue this opinion and the accompanying final judgment. The motions are fully

briefed and ripe for review.

BRIEF FACTUAL SUMMARY

In the court's September 15, 2005 Memorandum Opinion denying Bancorpsouth's motion to dismiss and plaintiffs' first motion for summary judgment there is a detailed statement of the facts related to these cases. Risking redundancy, the court will briefly summarize the facts here, leaving the details to the previous opinion. During the time period relevant to the facts of this case various banks – Peoples Bank of Senatobia, a division of First Tennessee Bank; First Bank; State Bank and Trust Company; and Cornerstone Bank (collectively referred to as "the banks" or "the creditors") – loaned money to defendant Louie Dickerson.[1] As collateral for these loans the banks took security interests in cattle that Dickerson owned at the time of their loans as well as, in some cases, any "after acquired" cattle. In early 2002 defendants Louie Dickerson, Bill Weeks, John David Weeks and Ellen Hardy pooled their resources to form Glenbrook, a cattle pre-conditioning business. The plaintiffs began doing business with Glenbrook on a regular basis in July of 2002. In November 2002 Dickerson submitted to the Mississippi Secretary of State a Certificate of Formation creating the LLC. However, it has been established not only that plaintiffs began purchasing cattle from Glenbrook before the filing of the certificate of formation of Glenbrook Cattle LLC, but also that many of the loans to Dickerson pre-dated the initial formation of Glenbrook and that none of the creditors has a financing statement that identifies Glenbrook as the debtor. The remaining parties in this case are either individual

---

[1]Bancorpsouth loaned funds to Ellen Hardy and filed two UCC-1 financing statement listing Hardy as the debtor and cattle as collateral.

defendants, banks who are the creditors of the individual defendants who claim to have liens against cattle owned by these individuals, or other cattle operators, like plaintiffs, who had previously had cattle in Glenbrook's pre-conditioning program.

In May 2004, Dennis Bryan, as a principal partner of Bryan Brothers Cattle Company and B & S Cattle Company ("plaintiffs"), had bought 1600 head of cattle from Glenbrook Cattle Company, according to his established pattern of purchase. The cattle were in various stages of Glenbrook's cattle pre-conditioning program. On May 19, 2004, Clayton Zweirschke, Glenbrook's farm manager, called Bryan and advised him that he should arrange for immediate shipment of all Bryan Brothers/B & S Cattle Company cattle in Glenbrook's pre-conditioning program because the cattle were not being properly fed or cared for as the result of financial problems. Shipment was arranged and after approximately half of the cattle had shipped, the Chancery Court of Tate County entered a temporary restraining order prohibiting additional shipment of the remaining cattle. Thereafter the plaintiffs deposited money with the Chancery Court of Tate County and took possession of the majority of the remaining cattle. In the interim, the plaintiffs filed their complaint for replevin in this court. Following removal of the state court action, the Clerk of Court for the Northern District of Mississippi accepted the funds from the Tate County Chancery Court. The Clerk of Court holds approximately $342,500.00 on deposit in this case, and it is ownership of those funds which is in dispute in this case.

On September 15, 2005 the undersigned denied defendant Bancorpsouth's motion to dismiss and the plaintiffs' motion for summary judgment stating:

> In the instant case, there is evidence that the initial purchases from the sale barns were made using the credit of either Louis Dickerson or Ellen Hardy. The court has been provided with copies of bills of sale or invoices directly from the sale

barns referencing Glenbrook as the individual or company for whom the cattle were purchased by the respective buyers. Nevertheless, the bills of sale from Glenbrook to Bryan Brothers or B & S Cattle Company show the seller of the cattle as "Louie Dickerson/Glenbrook Cattle Company" and are signed by Louie Dickerson individually. These facts make the import of the financing statements, all UCC-1F forms, as filed by the creditors, including Bancorpsouth, "at least ambiguous" at this point and may very well have functioned as intended, *i.e.*, they may have "provide[d] general notice or warning that [the] collateral might already be encumbered," thus triggering an obligation on the plaintiffs' part to inquire further into the status of the cattle in question. The court simply cannot accept at face value plaintiffs' argument that the name of the seller on the Bill of Sale is of no significance simply because plaintiffs meant to be dealing only with Glenbrook. Specifically, there exists a genuine issue of material fact as to whether a prudent purchaser would have recognized the liens on cattle owned by individuals affiliated with Glenbrook Cattle Company LLC as liens on cattle bought from Glenbrook especially in light of the fact that the Bill of Sale references both Dickerson and Glenbrook.

Based on the same rationale the undersigned also denied the plaintiffs' first motion for summary judgment. The summary judgment motions now before the court turn first on whether in May 2004 the cattle in Glenbrook's pre-conditioning program belonged to plaintiffs free and clear of any lien or interest of any creditor or other cattle operator pursuant to the Food Security Act ("FSA"), entitling plaintiffs to the monies on deposit with the court, or whether any of the defendants in this case, creditors and cattle operators, have perfected lien interests in the cattle and therefore in the funds deposited by plaintiffs with the Clerk of Court.[2] Secondly, defendant Peoples Bank's motion for summary judgment relates to the priority of liens by creditors and which defendants, if any, should be entitled to the funds in question. In light of evidence now before the court, the undersigned finds that plaintiffs' second motion for summary judgment

---

[2]While there is a pending motion *in limine* regarding the possibility of confusion of the issues if references to the FSA are allowed during trial, for purposes of this opinion, there is no confusion regarding application of the FSA and the application of Article 9 of the UCC, and all related administrative guidelines, with regard to the financing statements on file in this case.

4

should be granted and Peoples Bank's motion for summary judgment should be denied.   A.

STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).  After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).  Substantive law determines what is material.  *Anderson*, 477 U.S. at 249.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*, at 248.  If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented.  *Celotex*, 477 U.S. at 327.  "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587, 89 L. Ed. 2d at 552 (1986).

    B.    PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT

        1.    <u>Cattle Operators</u>

At the initial filing of this action William C. Weeks, John David Weeks, Herbert Whalen, Elbert Sides, Calvin Seago, Richard E. Stephens, Rex Adair, Connie Crenshaw, and Clint Bos along with Kenny Hurt and John Atkinson were named as individuals with possible ownership interests in the cattle in question. Defendants Kenny Hurt and John Atkinson are cattle operators in Tate County. They, like plaintiffs, bought cattle through Glenbrook. While Hurt and Atkinson had purchased cattle from Glenbrook during the time period in question, the cattle in issue in this case had all been paid for by plaintiffs. *See* Deposition of Clayton Zweirschke pp. 30-31. It has been established that Hurt and Atkinson did not own any of the cattle in

Glenbrook's pre-conditioning program at the time relevant to these events. [3] Neither Hurt nor Atkinson has ever filed financing statements listing themselves as secured parties. None of the other named individual defendants has made claims to the cattle or funds in issue. As such, the court finds that the cattle operators, Hurt and Atkinson, and the other named individuals, William C. Weeks, John David Weeks, Herbert Whalen, Elbert Sides, Calvin Seago, Richard E. Stephens, Rex Adair, Connie Crenshaw and Clint Bos, have no ownership interest in the cattle or funds in issue in this case and plaintiffs' motion for summary judgment, as it relates to these individuals, is proper.

    2.    Glenbrook's Owners

Glenbrook Cattle Company is a Limited Liability Corporation formed on November 8, 2002. While it was officially created as an LLC in November 2002, the business itself was originally formed and began operating in early 2002 when Louie Brooks, Ellen Hardy, John David Weeks and Bill Weeks pooled their resources to form Glenbrook Cattle. *See* Deposition of Ellen Hardy, pp. 8-11, attached as Exhibit A to plaintiffs' second motion for summary judgment. The original formation was not completed by any formal written contracts or agreements. *Id.* Louie Dickerson managed the business for Glenbrook and eventually filed its certificate of formation with the secretary of state's office. *See* Deposition of Louie Dickerson, pp. 44-45. To date, Dickerson, John David Weeks and Bill Weeks have not claimed any interest in the cattle or funds in issue in this case. Accordingly, the court finds that plaintiffs' second motion summary judgment should be granted as to these individuals.

---

[3] *See* Deposition of Clayton Zweirschke, pp. 29-35; Deposition of Dennis Bryan, pp. 85-86; Deposition of Louie Dickerson, p. 71(depositions as attachments B, C, and D to plaintiff's second motion for summary judgment).

Ellen Hardy has claimed that she has a direct ownership interest in the cattle and therefore the funds in question. Nevertheless, in her deposition, Hardy stated that the cattle in question, which she helped to load in order to transport them to Mr. Bryan in Texas on May 19, 2004, were "designated to Mr. Bryan." *See* Deposition of Ellen Hardy, p. 41. Hardy further acknowledged that the cows she had pledged as collateral for the loans she received were separate and distinct from cows that were bought and owned by Glenbrook. *Id.* at pp. 40-41, 60-62 and 68-69. Ms. Hardy's claim is based on her contention that she, as an equal partner in Glenbrook, had a partial ownership interest in the cows in question by virtue of the fact that they were owned by Glenbrook. However, Miss. Code Ann. § 79-29-108(2) grants Glenbrook, as an LLC, an independent power to purchase and own the cattle in question. Accordingly, the court finds that Ellen Hardy, like Dickerson and John David and Bill Weeks, and especially in light of her own acknowledgment of the fact that the cattle she pledged as collateral were separate from those cows she sold to plaintiffs, does not have an interest in the cattle or funds in question, and plaintiffs' second motion for summary judgment should be granted against defendant Hardy.

3. The Creditors

The FSA, 7 U.S.C. § 1631, governs decision of plaintiffs' motion. Pursuant to this section, a buyer in the ordinary course of business purchases a farm product free of a security interest even if the security interest is perfected and the buyer knows of the existence of such interest unless:

> **(2)** in the case of a farm product produced in a State that has established a central filing system [as has Mississippi] --
> **(A)** the buyer has failed to register with the Secretary of State of such State prior to the purchase of farm products [as did plaintiffs]; and
> **(B)** the secured party has filed an effective financing statement or notice that

8

covers the farm products being sold; . . . .

7 U.S.C. §1631(e)(2). Because Mississippi has established a central filing system, and plaintiffs failed to register with the Secretary of State, the question in this case becomes whether any of the creditors filed an "effective financing statement" covering the cattle before the purchase, thus preventing Bryan Brothers from purchasing the cattle free and clear of any security interest. The plaintiffs contend that no effective financing statement ever encumbered the cattle in question, as none ever listed Glenbrook, and therefore Bryan Brothers bought the cattle free and clear.

The defendants argue that their financing statements listing Dickerson and Hardy as debtors are sufficient to be considered an "effective financing statement" under Article 9 of the UCC and the FSA because both Hardy and Dickerson were associates in the Glenbrook Cattle LLC operation and Dickerson was the registered agent for Glenbrook. According to the defendants, the listing of Dickerson's name along with the name of the LLC as "seller" on the bills of sale to plaintiffs would have, or should have, put a reasonable purchaser on notice that it should inquire whether the cattle in question were encumbered by liens incurred by Dickerson.

The plaintiffs respond that under Miss. Code Ann. §79-29-701 Glenbrook itself and not the individual owners purchased, maintained and sold the cattle in question. Section 79-29-701 states in part:

> Unless its certificate of formation provides otherwise, *every limited liability company has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs, including, without limitation, power*:
> (a) To sue and be sued, complain and defend in its name;
>
> (b) *To purchase, receive, lease or otherwise acquire, and own, hold, improve, use and otherwise deal with, real and personal property*, and any legal or equitable

9

> interest in property, wherever located;
>
> (c) *To sell, convey, option, mortgage, pledge, lease, exchange and otherwise dispose of all or any part of its property*;
>
> (d) To purchase, receive, subscribe for, otherwise acquire, own, hold, vote, use, sell, mortgage, lend, pledge, otherwise dispose of, and deal in and with shares or other interests in, or obligations of, any other entity;
>
> (e) *To make contracts and guarantees, including guarantees of persons which, directly or indirectly, own, are owned by, or are under common ownership with the limited liability company, incur liabilities, borrow money, issue its notes, bonds and other obligations, and secure any of its obligations by mortgage or pledge of any of its property, franchises or income*;

(emphasis added). Under this provision, argue plaintiffs, Glenbrook Cattle Company LLC – and not the individuals who own an interest in Glenbrook – was the purchaser of the cattle in question, and any financing statement not naming Glenbrook as the debtor would not be effective under the FSA or UCC.

In determining whether the financing statements in question are "effective financing statements," the court looks to case law governing the adequacy of financing statements under the UCC. *See First Bank v. Eastern Livestock Company,* 837 F. Supp. 792, 795 (S. D. Miss. 1993). That body of law establishes that in order to perfect a security interest a financing statement "need not specifically identify the property which is the subject of a security interest; rather it is sufficient if the description would put a reasonably prudent prospective lender or buyer on notice that the collateral sought to be purchased or encumbered might be the subject of a preexisting security interest." *First Bank* at 799; *See also*, *In re McBee,* 714 F.2d 1316, 1321 (5th Cir.1983) (critical inquiry in assessing whether security interest is perfected is "whether a reasonably prudent subsequent creditor would have discovered the prior security interest."); *United States v. Crittenden,* 600 F.2d 478, 480 (5th Cir.1979) (whether record gives sufficient

notice " 'depends . . . . on what a person of ordinary business prudence would have found out from pursuing such lines of inquiry as the data given . . . would naturally suggest to his mind' ") (quoting *Yancey Bros. v. Dehco,* 108 Ga.App. 875, 877-78, 134 S.E.2d 828, 831 (1964)).

In this case, no financing statement from any defendant lender lists Glenbrook as a debtor. However, there is no doubt that plaintiffs were at least aware that Louie Dickerson was a key player in the operation of Glenbrook. Dickerson's e-mail address as "ldfarms@bellsouth.net" is listed on each bill of sale as the e-mail address for Glenbrook. Also, the Bills of Sale from Glenbrook to plaintiffs list in the text of the document "Louie Dickerson/Glenbrook Cattle Co." as the seller, yet on the Seller's signature line, each bill of sale is signed by Louie Dickerson alone, and not "Glenbrook by Louie Dickerson" or "Louie Dickerson for Glenbrook" or some other such alternative. In comparison, the bills of sale are all signed on behalf of Bryan Brothers Cattle by "Bryan Bros. Cattle by Dennis L. Bryan." Further, there exists at least one UCC-1 financing statement that indicates that the collateral for a loan from Bancorpsouth to Dickerson was "500 head of cattle located in Tate County." *See* Financing Statement filed on 3/22/04 with the Mississippi Secretary of State's Office, attached as Exhibit F to People's Bank's motion for summary judgment.

The court previously had questions whether even a reasonably prudent purchaser would have known to inquire as to the possibility of encumbrances not only as to Dickerson, but also as to the other associates of Glenbrook Cattle. The Fifth Circuit has held that an effective financing statement need not specifically identify the collateral "if the description would put a reasonably prudent prospective . . . buyer on notice that the collateral sought to be purchased or encumbered *might be* the subject of a preexisting security interest," [emphasis added], it appears that plaintiffs

11

should have been on notice to inquire at the very least as to encumbrances on cattle owned by Louie Dickerson. *First Bank* at 799. "The sole function of financing statements under the UCC is to put third parties – usually prospective buyers or lenders – on notice that there may be an enforceable security interest in the property of the debtor." *First Bank* at 799, citing *Kubota Tractor Corp. v. Citizens & Southern Nat'l Bank,* 198 Ga.App. 830, 833, 403 S.E.2d 218, 222 (1991). In the court's September 2005 Opinion, the undersigned found that the financing statements as filed by the defendant creditors were "at least ambiguous" but that they "may very well have functioned as intended, *i.e.*, they may have provided 'general notice or warning that [the] collateral might already be encumbered,' thus triggering an obligation on the plaintiffs' part to inquire further into the status of the cattle in question." Court's Memorandum Opinion dated September 15, 2005, pp. 10-11.

In the *First Bank* case, Judge Lee held that "[i]t seems reasonably clear, and the cited cases support the notion that a financing statement, though ambiguous, may nevertheless provide adequate notice to a prospective purchaser or lender that such party should make further inquiry to ascertain the extent of the collateral covered by a secured party's agreement with the debtor." *First Bank* at 801. In other words, a description in a financing statement, even *because of* an ambiguity, may require further inquiry by a prospective purchaser or lender. Upon due consideration of all the information before the court, the undersigned finds that the relevant financing statements as filed by Louie Dickerson's creditors were effective financing statements pursuant to the FSA in that they were sufficient to put a reasonable purchaser on notice that it should at least inquire into the status of the cattle in question. That finding, however, does not end the court's inquiry.

It is undisputed that the prospective purchaser, in this case plaintiffs, would have found no financing statements which name Glenbrook Cattle Company or any reasonable variation of that name as a debtor. As plaintiffs were not registered buyers who would have been protected under the FSA, and the financing statements were at least sufficiently effective to require inquiry, the question becomes whether the security interests purportedly represented by the financing statements were otherwise perfected under the UCC, and if so, the priority of each. Therefore, the court finds that even though plaintiffs were not protected under the FSA, they may still be entitled to the funds in issue if there do not exist perfected security interests in the cattle in question.

      C.      GENERAL LAW GOVERNING SECURITY INTERESTS

In order for a financing statement to perfect a lien under the Uniform Commercial Code, there must first be a written security agreement containing a description of the collateral. *First Bank* at 797. A security interest "attaches" when the debtor signs a valid security agreement which covers the collateral. *See* Miss. Code Ann. § 75-9- 203(1)(a). That security interest is "perfected" when the secured party files an effective financing statement which includes, *inter alia,* "a description of the farm products subject to the security interest" established by the security agreement. A financing statement alone does not create a security interest and cannot extend a security interest beyond what is described in the security agreement. *First Bank* at 798, citing *In re Mann,* 318 F.Supp. 32, 36 (W.D.Va.1970) ("A financing statement cannot add collateral not described in the security agreement."). In this case, each security agreement and the applicable UCC financing statement list as collateral either a specific number of cattle or an

13

interest in cattle and lists as the debtor defendant Dickerson.[4]  Upon filing of the financing statements with the Office of the Secretary of State the security interests became perfected as to cattle owned by Dickerson.  This fact notwithstanding, the 1600 head of cattle in question were bought by Glenbrook from the action barns and then sold by Glenbrook to plaintiffs.  *See* Deposition of Clayton Zweirschke at pp. 18, 89, and 106;  Deposition of Dennis Bryan, p. 37. Louie Dickerson has never had an ownership interest in the cattle.

On January 1, 2002, the revised version of Article 9 of the Uniform Commercial Code took effect in Mississippi.  While the revised version does apply to some of the loans due to the time period in which the loan was made and financing statements filed, the applicable portions of the pre-revision section, §75-9-402(1), and the revised Article 9,  § 75-9-502(a)(1), both require essentially the same things in order to have an effective financing statement: (1) name of the debtor, (2)name of the secured party, and (3) a statement indicating the types, or describing, the collateral.  In this case, there are no financing statements that list Glenbrook Cattle Company as a debtor.  While the financing statements in question may have been sufficient as to Dickerson and any cattle he owned, the cattle in question was bought by and sold by Glenbrook, not Dickerson. While the record and the instant motions for summary judgment reflect that at times Dickerson owned cattle in his individual capacity, separate and apart from Glenbrook, the bills of sale and invoices in this case clearly establish Glenbrook as buyer and seller.  *See* Plaintiffs' Complaint,

---

[4]There is a question of law regarding the sufficiency of listing the debtor's name as Brooks L. Dickerson, Jr., or a variation thereof that lists the debtor as "Louie" Dickerson, his nickname under which Dickerson conducted most of his business.  However, given the fact that there are no financing statements listing Glenbrook as the debtor, the issue of Dickerson's name is not a factor in this decision.

Exhibit A-1.  It is only reasonable that Dickerson cannot encumber property which he does not own.  It follows that Dickerson's creditors cannot encumber cattle neither purchased nor owned by Dickerson.  Under §79-29-701, Glenbrook and not Dickerson had the right to purchase, sell, and/or encumber the cattle it bought.  As there were no effective financing statements covering the cattle purchased by Glenbrook, *i.e.,* the 1600 head of cattle in issue, the plaintiffs are deemed to have purchased the cattle free and clear.

        D.        PEOPLES BANK'S MOTION FOR SUMMARY JUDGMENT

In light of the court's ruling in this case, the court finds that the motion of Peoples Bank should be denied.

        E.        CORNERSTONE BANK'S MOTION TO STRIKE

In light of the court's ruling, the court finds that the motion of Cornerstone Bank to strike should be denied as moot.

        F.        PEOPLES BANK'S MOTIONS *IN LIMINE*

In light of the court's ruling in this case, the court finds that Peoples Bank's three motions *in limine* should be denied.

CONCLUSION

For the forgoing reasons, the court finds that the second motion of the plaintiffs for summary judgment should be granted, the motion of Peoples Bank for summary judgment should be denied, and the motion of Cornerstone Bank to strike and Peoples Bank's three motions *in limine* should be denied as moot.

A separate judgment in accordance with this memorandum opinion shall this day be

entered accordingly.

      THIS, the 1ST day of May, 2006.

                                                  /s/ S. ALLAN ALEXANDER
                                        UNITED STATES MAGISTRATE JUDGE